# IN THE UNITED DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| Erin L. Holowicki | ) |
| individually | )The Honorable Ronald Guzman |
| and on behalf of all persons | ) |
| similarly situated | ) CASE NO 18 CV 7337 |
| as Collective representative under | ) |
| Illinois Law and/or as | ) |
| members of the Collective as permitted | ) |
| under the Fair Labor Standards Act; | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| Lakefront Restaurant Inc. | ) |
| d/b/a | ) |
| Stella's Diner and | ) |
| MARIA MAVRAGANES | ) |
| ANGELO MAVRAGANES | ) |
| And | ) |
| "GUS" MAVRAGANES | ) |
| as individuals | ) |
| under FLSA and Illinois Wage Laws | ) |
| | ) **JURY TRIAL DEMANDED** |
| | ) **ON ALL COUNTS** |
| Defendants. | ) |

## PLAINTIFF'S SECOND AMENDED
## COLLECTIVE ACTION COMPLAINT

NOW COMES the Plaintiff, Erin L. Holowicki, individually and on behalf of all others similarly

situated, as collective representative, by and through her undersigned counsel of record, upon

personal knowledge as to those allegations in which she so possesses and upon information and

belief as to all other matters, pursuant to §216(b) of the Fair Labor Standards Act (hereinafter

"FLSA"), the Illinois Minimum Wage Law 820 ILCS 105/1 *et seq* (hereinafter "IMWL" ) the

Chicago Minimum Wage Ordinance (CMWO) Illinois Wage Payment and Collection Act 820

ILCS 115/1 *et seq.* (West 2002)) (hereinafter "IWPCA" ) and  and brings this cause of action

against Defendant Lakefront Restaurant Inc., d/b/a Stella's Diner (Hereinafter referred to as "Stella's"), and against Defendants MARIA MAVRAGANES, ANGELO MAVRAGANES, And "GUS" MAVRAGANES as individuals under FLSA and Illinois Wage Laws and in so doing states the following:

## NATURE OF THE ACTION

1. Plaintiff, Erin L. Holowicki alleges individually and on behalf of herself and other similarly situated current, former and future employees of the Defendant, (Hereinafter references to "Plaintiff" are inclusive of both Individual Plaintiff and those employees that are similarly situated to the Individual Plaintiff) that she, under both federal and state wage laws, are entitled to be paid for all hours worked and to receive minimum wage for all hours worked and/or receive time and half for all hours worked over forty (40) hours per week, and/or proper payment based on Defendants' theft of Plaintiff's tips.

2. Plaintiff presents three (3) separate claims which are summarized as follows:

   a. Claim 1 – Plaintiff and Collective are not paid for all hours of work and Defendants thereby lose claims to payment via tip-rate exemption.

      i. Defendant pays four hours regardless of the length of shift (an off the clock claim or a time "shaving" claim), despite Plaintiff working approximately 7 hours per shift.

   b. Claim 2 – Defendant takes $15-$20 of servers' tips for a tip pool intended to be paid to busboys,

      i. but Defendants fails to pay the $15-$20 to the busboys thereby retaining those tips, and thereby losing its tip-rate exemption.

    c. Claim 3 – Defendants steal tips via use of a "ghost server" and or direct theft of cash tips from the tables,

        i. Defendants assign credit card tips to a server that does not exist and retaining those funds by managers/owners and thereby losing its tip-rate exemption.

3. Defendants policy and procedure of paying only four hours also is a violation of the tip pool regulations in that one of the tip pool regulations is that Plaintiff and collective are to be paid the "tip rate" for hours of work, yet by only paying four hours, Defendants are not paying the proper and complete tip rate of pay.

4. An example of this is shown by simple math, if Plaintiff works 5.5 hours but is paid for only 4 hours, Plaintiff is receives $27.00 for four hours work (4 x $6.75 (required tip rate of pay under CMWO)) but the actual rate of pay is $4.90 per hour ($27.00 divided by 5.5 =$4.90 per hour paid).

5. $4.90 per hour is less that the minimum wage under the CMWO ($6.25) and the IWML ($4.95).

6. The other two claims ($15-$20 tip pool violation and the ghost-server claims) are also violations of the tip pool regulations and/or tip regulations.

7. If any claim is found correct and proven, the Defendants will be required to pay the following:

    a. Pay back the tips taken

    b. Pay the difference from the tip rate of pay and the applicable minimum wages for all hours worked for the last three years for all the servers.

    c. Pay all associated penalties:

     i.   Liquidated Damages,

    ii.   2% per month IMWL penalties,

   iii.   2% per month IWCPA penalties,

   iv.   triple damages pursuant to the CMWO

  d.  Fees and costs.

8. This action is also brought as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, 207 and 216(b) to recover unpaid wages for overtime pay which was not compensated at the proper rate of pay, rate of pay to include all compensation and for violations of the tip pool regulations.

9. Plaintiff's federal FLSA claims are brought as "opt-in" collective action claims pursuant to the FLSA; state law and common law claims are brought as a conventional Collective action.

10. Plaintiff, in her claims, request injunctive and declaratory relief, and compensation and credit for all uncompensated work required, suffered, and/or permitted by Defendants, liquidated and/or other damages as permitted by applicable law, restitution and payment of all benefits Defendants obtained from their unlawful business practices and attorneys' fees and costs.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331 and 1337 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C 1332 and 1367. This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331 based on 29 U.S.C. 216(b) known as the Fair Labor Standards Act.

12.     This court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C 1332 and 1367 and Plaintiff seeks application of the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ("IMWL")Illinois Wage Payment and Collection Act 820 ILCS 115/1 *et seq.* (West 2002))("IWPCA" ).

13.     The Court is authorized to issue a declaratory judgment.

14.     Venue is proper in this Court.

15.     Defendant does business and is a resident of this District and Division of Federal Court.

## ENTERPRISE JURISDICTION

16.     Plaintiff alleges Enterprise Jurisdiction, as Defendant is sufficient size to engage in commerce.

17.     Thus Plaintiff alleges that Defendant has at least $500,000 in sales per year.

18.     Defendant's operations exceed sales of $500,000.00.

19.     Defendant, is an enterprise that regularly and recurrently have at least two employees engaged in commerce.

## INDIVIDUAL FLSA COVERAGE

20.     Further, the Plaintiff also alleges individual FLSA Coverage.

21.     Defendants are also covered under individual coverage of the FLSA.

22.     Even when there is no enterprise coverage, employees are protected by the FLSA if their work regularly involves them in commerce between States ("interstate commerce"). The FLSA covers individual workers who are "engaged in commerce or in the production of goods for commerce."

23. Here Plaintiff, and Collective sold products to ultimate consumers that traveled in commerce.

24. The items that Plaintiff and collective sold include food items like orange juice, pineapple juice, meat, Mexican sausage, breads, soft-drinks and juices from other states in America and from other countries.

## FACTS REGARDING THE PLAINTIFF

25. Plaintiff, Erin L. Holowicki, is a resident of the State of Illinois.

## STELLA'S CORPORATE FACTS

26. Defendant Lakefront Restaurant d/b/a Stella's Diner (Hereinafter referred to as "Stella's"), is a corporation or business which does business in Illinois.

27. Stella's operates a restaurant in Chicago Illinois.

28. MARIA MAVRAGANES, ANGELO MAVRAGANES, And "GUS" MAVRAGANES are owners and/or operators of Stella's.

## COLLECTIVE ACTION ALLEGATIONS

29. Plaintiff brings claims for relief for violation of the FLSA as a collective action pursuant to Section 16(b) of the FLSA (29 U.S.C. § 216(b)), on behalf of all employees of STELLA'S who were, are, or will be employed by STELLA'S during the period of three (3) years prior to the date of commencement of this action through the date of judgment in this action, who were:

a. Worked off the clock via the only paying four hours policy and procedure which reduced or failed to pay for all overtime wages.

b. Tip pool requirements were not fulfilled

c. Tip pool and or tip rate regulations were not followed, via the ghost server policy, and/or failure to pay out $15-$20 of the tip pool to those in the tip pool.

d. Who were not compensated at one-and-one-half times the regular rate of pay for all work performed in excess of forty (40) hours per work week and/or who were not compensated at the federal minimum wage rate of $7.25 per hour, via the above named policy and procedures.

30. FLSA violation claims are brought and maintained as an "opt-in" collective action pursuant to § 16(b) of FLSA, 29 U.S.C. § 216(b), for all FLSA claims asserted by the Plaintiff, since the FLSA claims of the Plaintiff are similar to the FLSA claims of all server employees employed by Stella's.

31. Defendant is liable for improperly compensating Plaintiff and FLSA Collective under the FLSA, and as such notice should be sent to the FLSA Collective. There are numerous similarly situated current and former employees of STELLA'S who have been denied proper payment of the overtime wages and/or violations of tip rate regulations, and/or tip pool procedures. These current, former and future employees would benefit from the issuance of a court supervised notice of the present lawsuit and the opportunity to join in the present lawsuit. The similarly situated employees are known to Defendant and are readily identifiable through Defendant's records.

## STATEMENT OF FACTS

**A.** **STELLA'S policies and procedures and Compensation Practices fail to pay proper overtime rate of pay and/or Minimum Wage and/or take tips which are wages of Plaintiff and Collective**

32. Plaintiff was employed by STELLA'S as an employee of the Defendant and Plaintiff who work beyond forty hours, but for which Defendants failed to pay overtime at the proper and correct rate of pay.

### FAILURE TO PAY ALL WORK HOURS VIA DEFENDANTS' "ONLY

### PAYING FOUR HOURS PER SHIFT"

### POLICY AND PROCEDURE

33. Plaintiff and all waitstaff worked as hourly non-exempt employees.

34. Defendant paid Plaintiff and all servers/waitstaff at a reduced rate of pay, known as a "Tip-Rate of Pay" and paid Plaintiff and Collective $6.75 per hour.

35. Plaintiff and Collective was paid $6.75 per hour for hours paid less than 40 hours.

36. However, Plaintiff was not paid for all work time, thus Plaintiff was not paid proper and complete minimum wage and overtime wages.

37. Plaintiff estimates that she worked between 3 hours off the clock each work shift due to the failure to pay all work hours.

38. This off-the-clock work occurred when the Plaintiff and other employees had their work time shaved, which occurred every shift and every week, as this is Defendants' policy and procedure to shave work-time every shift and every week.

39. The Defendants shaving procedures require Plaintiff to work off the clock, each and every shift.

### DEFENDANTS' PROCEDURE OF PAYING FOUR HOURS PER SHIFT
### CAUSES A FAILURE TO PAY OVERTIME WAGES

40. Plaintiff pleads a specific overtime violation, as required by some District Court Judges.

41. During the Pay period of 7/23/18 to 7/29/18, Plaintiff was paid 32.00 hours at a rate of $6.75 per hour, but Plaintiff also worked, off the clock, approximately 8 shifts and paid just four hours for each, (8 x 4 = 32), but Plaintiff worked approximately 7 hours on each shift, for a total work hours of 56 hours with sixteen hours of overtime, for which Plaintiff was not paid any wages.

42. As demanded by Defendants, the above FLSA violation was caused by the Defendants' policy and procedure described in that paragraph, the policy and procedure of paying only four hours, regardless of the hours worked.

43. This is a single example of overtime violation, however there are other violations in the same week under different theories, such as this week Plaintiff paid into the tip pool and management retained those funds, in violation of the tip pool regulations; thus a tip pool regulation violation.

44. However the tip pool regulation violation is also a minimum wage violation, as the retaining the tips by management voids Defendants ability to claim a tip rate exemption, resulting in minimum wage violations as Defendants are required to pay $7.25, $8.25 and $12.00, yet Plaintiff paycheck listed a pay rate of $6.45.

45. For this week, (and all weeks in which Defendants retained the tip pool funds) the theft of the tip pool payments of $15-20, which was retained by management of the restaurant, voids the Defendants' tip rate exemption, thus Plaintiff is also owed minimum wages equal to the 56 hours times the wage differential from $6.45 and $7.25 (FLSA), $8.25 (IMWL) and $12.00 (CMWO).

46.     Thus Plaintiff was not paid for approximately four hours of overtime work, during the work week of 7/23/18 to 7/29/18 and for minimum wages as alleged above.

**Chicago Minimum Wage Ordinance.**

47.     Chicago, Illinois has a minimum wage of $12.00 per hour for non-tipped employees as of July 1, 2018.

48.     The minimum wage for employees who receive gratuities is $6.25 per hour.

49.     This minimum applies to employees who work two hours in any two-week period in the City of Chicago.

DEDUCTIONS VIOLATE THE TIP RATE REGULATIONS

50.     In addition to the violations for the deductions, the deductions have a much larger effect on Plaintiff's claims, in that the deductions violate the tip rate regulations.

51.     Defendants pay Plaintiff $6.45-$6.75 per hour, which is less than the minimum wage rates for the FLSA, IMWL, and CMWO.

52.     Defendants pay less than the minimum wage under FLSA, IMWL, and CMWO, via claiming and applying the tips received by the servers, to off-set the reduced rate of pay.

53.     To be allowed to maintain pay employees at a "tip rate" Defendants must fulfill ALL the requirements for tip rate pay as per the FLSA, IMWL, and CMWO.

54.     One of the regulations that Defendants must follow is that the employees must receive ___*all*___ their earned tips.

55.     Another requirement is that Plaintiff is paid the minimum wage "tip-rate", and by the Defendants shaving policy and procedure Plaintiff was not paid this rate of pay, thus again Defendants lose their claims to tip-rate exemption, via the $15-

$20 deductions or "ghost server" thefts the servers at not receiving all their earned tips.

56. The compelled deduction from the tips of servers reduces their tip wages.

57. In the Alternative, if the Defendants claim the tips are not taken via the deductions, the Defendants deductions violate the tip regulations by not paying the required tip rate of pay.

**Defendant Demanded Edits**

58. Defendants' have claimed that they have no notice of the claims without great amounts of factual detail, and Defendants cite a single District Court case to support that claim.

59. Plaintiff disagrees that this is the standard under the FRCP, however to prevent further delays in this case, to avoid another round of motions, Plaintiff provides more detail, but disputes that such is required under a Notice pleading standard.

60. Firstly, Plaintiff was employed by Defendants for approximately four years. Plaintiff's employment ended just prior to the filing of the original complaint in November of 2018, thus her employment began with Defendants in 2014.

61. The "who" are ALL the server employees of the Defendant, the names provided by Defendants are Gail Combs, Rowe Cavelli, Anna Moroni, Laura Waslawski, Alexandra Mavragranes, Erin Holowicki, Samanatha Mavragranes, Terrence

Alexander, Amber Nicole Davidson, Kateryna Ryzhenko, Maria Rodriguez and Jeanette Payton, upon information and belief.

62. It is also possible that all hourly employees (busboys, cooks, ect) were also paid in the same manner, via 4-hour shift payments, but Plaintiff is unaware exactly how the busboys and other employees hours were calculated as she did not work in those positions, nor engage in protracted discusses with those persons.

63. The "what" was plead originally, but Plaintiff re-pleads again: Plaintiff presents three (3) separate claims which are summarized as follows:

   a. Claim 1 – Plaintiff and Collective are not paid for all hours of work.

      i. Defendant pays four hours regardless of the length of shift (an off the clock claim or a time "shaving" claim)

   b. Claim 2 – Defendant takes $15-$20 of servers' tips for a tip pool intended to be paid to busboys,

      i. but Defendants fails to pay the $15-$20 to the busboys thereby retaining those tips

   c. Claim 3 – Defendants steal tips via use of a "ghost server",

      i. Defendants assign credit card tips to a server that does not exist and retaining those funds by managers/owners

64. The "when" is every shift, every day. Plaintiff notes that the shaving and tip claims occurred every shift, but her overtime claims are less frequent, see below. Also the "ghost server" tip theft was only detected by Plaintiff on a few occasions, but could be a wider and more prolific occurrence, as Defendants did not share with her all their thefts via the "ghost server".

65.   The "How" is as stated above: Plaintiff presents three (3) separate claims which are summarized as follows:

a.   Claim 1 – Plaintiff and Collective are not paid for all hours of work.

   i.   Defendant pays four hours regardless of the length of shift (an off the clock claim or a time "shaving" claim)

b.   Claim 2 – Defendant takes  $15-$20 of servers' tips for a tip pool intended to be paid to busboys,

   i.   but Defendants fails to pay the  $15-$20 to the busboys thereby retaining those tips

c.   Claim 3 – Defendants steal tips via use of a "ghost server",

   i.   Defendants assign credit card tips to a server that does not exist and retaining those funds by managers/owners

66.   The "why" is to allow Stella's and the Individual Defendants to steal money from servers and Plaintiff.

67.   The "time period" is for the last four years, for Plaintiff's claims, though Plaintiff's claims are likely capped at three years due to the Statute of Limitations under the FLSA and IMWL but not capped under the IWPCA 5-year limitations period.

68.   The "how much is involved" is an impossibly complex question for pleadings, as the Plaintiff worked for Defendant for 4 years, worked 5-10 shifts a week, 45-52 weeks a year.

a.   That results in 2000 calculations for Plaintiff alone. Added to that, there are different remedies: stolen tips, shorted hours, differential from tip rate to

regular rate (under three separate laws and rates of pay), liquidated damages, 2% IMWL penalties, treble penalties, pre-judgement interest.

69.     The "when or how often during her employment she worked overtime" Plaintiff worked overtime approximately 18 times in the last three years. (while Defendants have not produced summary documents of her payroll yet, Plaintiff has her checks which she is relying upon for this pleading). The pay-dates for overtime weeks include:

a.  9/3/18

b.  8/8/18

c.  8/1/18

d.  7/4/18

e.  6/20/18

f.  6/6/18

g.  10/4/17

h.  9/13/17

i.  9/6/17

j.  7/26/17

k.  4/19/17

l.  1/24/17

m.  10/18/16

n.  8/30/16

o.  8/2/16

p.  7/16/16

q. 6/7/16

r. 11/3/15

70. The "when or how often during her employment she…. or failed to receive appropriate compensation" was each and every shift in that Plaintiff was paid only 4 hours each and every shift, and Plaintiff's tips were taken each and every shift as plead elsewhere.

71. "how much overtime or how many hours worked as a result of any asserted Defendants' policy;" varied; in weeks where Plaintiff worked 6 shifts, and she was paid 24 hours (6 X 4=24), yet Plaintiff worked approximately 42 hours (6 x 7 =42), in weeks where Plaintiff worked 7 shifts, and she was paid 28 hours (4 x 7 = 28), Plaintiff worked approximately 49 hours (7 x 7 = 49), and when Plaintiff worked 8 shifts, and she was paid 32 hours (8 x 4 = 32), yet Plaintiff worked approximately 56 hours (8 X 7 = 56), and ALL these unpaid overtime hours were unpaid as a result of the Defendants' "four-hour" per shift payment policy.

72. As to "Whether other compensation may have offset any deficiency in overtime Compensation" Defendants are not allowed to avoid paying overtime, based on payment of tips to Plaintiff and Collective and the same applies to tip pool regulations. See 29 U.S.C. §207(h).

**Individual Defendant Facts**

73. Individual Defendants' Gus Mavraganes, Maria Mavraganes and Angelo Mavraganes are siblings. Their parents were the original owners/operators of the restaurant. Now the parents are deceased and they all own/operate the restaurant

together. Defendants' have another brother, Peter Mavraganes who is not involved in operations thus is not named as a Defendant, even though he might be a part-owner

74. In general, Gus Mavraganes is night shift manager, Maria Mavraganes is day shift manager, and Angelo Mavraganes is the swing shift management, but he is also a prep cook. Angelo Mavraganes controls most of the back of house operations. Maria Mavraganes also does prep cook on weekend mornings and Maria Mavraganes is in control of the scheduling for all staff.

75. Plaintiff worked mostly with Maria Mavraganes.

76. Plaintiff caught Gus Mavraganes withholding cash tips and engaging in the ghost server theft. Example of cash theft: one day a busboy told Plaintiff a table left her a nice tip, but the money wasn't there. When Plaintiff confronted Gus Mavraganes, he took the money from his pocket and gave it to Plaintiff. If Plaintiff hadn't asked him, Plaintiff never would have never seen it. Plaintiff is confident that other cash tips were stolen by the Defendants.

77. An example of ghost theft: Plaintiff saw her table's bill and credit slip but the credit slip didn't have her server number. Plaintiff printed her to report and saw her tips were unusually low for such a shift. Plaintiff confronted Gus Mavraganes and he said he would fix it. After "fixing" it he printed Plaintiff's report and the amount was the same. When Plaintiff showed him her report, he gave Plaintiff cash from the drawer.

78. Plaintiff shared these stories of tip thefts with her coworkers (Laura, Ana, Gail, Jean and Rowe) about the incident and they all agreed they knew Gus Mavraganes and Angelo Mavraganes both steal tips of the servers.

79. Plaintiff has also seen Angelo Mavraganes take money from tables and give the server some or none of the cash. Plaintiff remembers one day she saw $8 on a table and he gave her just $5. When she asked about it, he mysteriously returned with $6 and said there was also money at the register. This day was busy and there was no time to continue with the subject.

80. When confronted about the policy and procedure of paying only four hours, regardless of the hours worked Gus Mavraganes refused to talk about payroll, while Maria Mavraganes was dismissive and intimidating.

81. When confronted about the tips taken from checks Maria Mavraganes would say it was to pay the busboys. Maria Mavraganes told Plaintiff when she was newly hired that Defendants only pay servers 4 hours per-shift because if they recorded that servers worked 7 hours each shift, the servers' credit tips would not amount to minimum wage (thus Defendants would be forced to pay the difference).

82. Upon information and believe Angelo Mavraganes was in communication with payroll. He signed the checks and if the servers had discrepancies (other than the 4 hour/shift and missing $15-20/shift), he would "fix" it, he would not "fix" the time shaving (paying four hours) nor the tip thefts. When confronted about the way we were shorted work time, Angelo Mavraganes would defer the question to Maria Mavraganes.

83.   One of the Individual Defendants was always at the restaurant, overseeing, repairing, decorating, organizing. They were 100% hands-on in the operations: hiring, firing, scheduling, supervising, and causing the wage violations.

84.   The Defendants unlawful conduct was and is not inadvertent, de minimis, isolated or sporadic, but widespread, repeated and part of a pattern and practice of conduct affecting all Defendants' employees.

85.   Defendants consented, were knowledgeable of that they were paying the overtime rate of pay incorrectly.

86.   Plaintiff is paid on an hourly pay rate and is classified as "non-exempt" employee by Defendants.

87.   Plaintiff and the Collective employees were not paid the proper rate of overtime wages.

88.   This is a FLSA violation because the Plaintiff works beyond forty (40) hours, thus Plaintiff is owed time-and-half of her regular pay for ALL hours beyond 40.

89.   Further that by forcing her to work off the clock, this is a violation of the Plaintiff's rights under FLSA as she was not paid at time-and-half during these hours and rather is paid nothing for this work time.

90.   Further this also a violation of the Plaintiff's rights under Illinois Minimum Wage law and Illinois over-time wage law and IWPCA.

91.   The FLSA defines the "regular rate" as all remuneration for employment paid to or on behalf of the employee, before any deductions from wages are made. (See 29 U.S.C. §207(e); 29 C.F.R. §778.109.)

**STELLA'S's Actions were Willful, Knowledgeable and/or Had Reckless Disregard for FSLA Regulations**

92.  STELLA'S required and permitted Plaintiff and the FLSA Collective, to work more than 40 hours in a week.  STELLA'S did not pay Plaintiff and the FLSA Collective the proper overtime rate for all of these overtime hours and/or minimum wage hours.

93.  STELLA'S unlawful conduct has been uniform, widespread, repeated and consistent.

94.  Stella's willful violations are especially demonstrated by their knowledge that its employees were not paid the correct rate of pay and/or were not paid for all hours of work and/or had tips taken without authority.

95.  Plaintiff presents three (3) separate claims which are summarized as follows, however as demanded by Defendants, all three types of claims are willful actions/violations of the law:

a.  Claim 1 – Defendants willfully did not pay for all hours of work.

    i.  Defendants' willfully paid four hours regardless of the length of shift (an off the clock claim or a time "shaving" claim)

b.  Claim 2 – Defendants' willfully take/took $15-$20 of servers' tips for a tip pool intended to be paid to busboys,

    i.  but Defendants willfully fail to pay the  $15-$20 to the busboys thereby willfully retaining those tips

c.  Claim 3 – Defendants willfully steal tips via use of a "ghost server",

      i. Defendants willfully assign credit card tips to a server that does not exist and willfully retaining those funds by managers/owners.

96. Stella's must have known that, or shown reckless disregard for whether its conduct was prohibited by statute, as it is well known that paying all work hours is required under the law and reckless to believe that paying only four hours regardless of the work hours was legal.

97. Likewise Stella's must have known that taking tips ($15-20) from servers, and management retaining those tips was illegal.

98. Likewise Stella's must have known that taking tips via a "ghost server" was illegal.

99. All allegations and claims alleged herein should be read in the alternative, to the extent such an interpretation is necessitated by law and permitted under Federal Law, Illinois Law and other state laws.

100. All allegations plead herein are plead with personal knowledge as to those allegations to which Plaintiffs have such knowledge and based upon "information and belief" as to all other allegations.

**<u>FIRST CLAIM FOR RELIEF</u>**
**Individual Against All Defendants**
**Under the Illinois Minimum Wage Law "IMWL"**

101. Plaintiff realleges and incorporates by reference all the preceding paragraphs, as if fully set forth herein.

102. Plaintiff was an employee of the Defendants pursuant to the IMWL.

103. Plaintiff was employed by Defendants as an employee.

104.    It is and was at all relevant times, a policy of Defendants to pay employees at an overtime rate of pay and/or minimum wage pursuit to the Defendants' improper deduction policy and procedures and/or off-the-clock work, and/or Tip rate violations.

105.    The Defendants unlawful conduct was and is not inadvertent, de minimis, isolated or sporadic, but widespread, repeated and part of a pattern and practice of conduct affecting most if not all of the Defendants' employees.

106.    As a result of the foregoing, Plaintiff has been damaged in an amount to be determined at trial.

107.    Illinois law contains a three-year statute of limitations regardless of whether the violation was willful. 820 ILCS 105/12(a).

## **SECOND CLAIM**

### **Individual Against All Defendants**
### **Under Illinois Wage Payment and Collection Act "IWPCA"**

108.    Plaintiff realleges and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

109.    Plaintiff was employed by Defendants.

110.    It is and was at all relevant times, a policy of Defendants to take, without Agreement wages, tips and/or work time.

111.    Further Defendants agreed to pay a rate of pay to the Plaintiff; the agreement for Plaintiff was to pay $6.75 per hour, yet by only paying 4 hours per shift, Defendants violated that agreement, thereby paying less than the agreed rate of pay.

112. This Agreement is both an Oral Agreement, as Defendants stated to Plaintiff that her rate of pay would be $6.75 *per hour*, and a Written Agreement, as Plaintiff's paychecks (and likely other Defendant documents such as payroll records) list Plaintiff's rate of pay as $6.75 *per hour*.

113. The time period for the failure to pay is the entire period of the Plaintiff's employment, as the Oral Agreement has a limitations period of 5 years, while the Written Agreement is 10 years.

114. The Defendants unlawful conduct was and is not inadvertent, de minimis, isolated or sporadic, but widespread, repeated and part of a pattern and practice of conduct affecting all Defendants' employees.

115. Further that Defendants' policy and procedure of paying only four hours per shift forced Plaintiff to work "off-the-clock".

116. This cause of action arises out of employment contracts or agreements; written and/or oral as described above and herein.

117. The named Plaintiff was employed by Defendants.

118. The Defendants unlawful conduct was and is not inadvertent, de minimis, isolated or sporadic, but widespread, repeated and part of a pattern and practice of conduct affecting all Defendants' employees.

119. Plaintiff was not an independent contractor, rather was an employee of the Defendants by oral agreement and/or written contract.

120. Plaintiff's employment were in the usual course of business for which such service is performed.

121. Plaintiff does not possess a proprietary interest in the Defendants.

122. The Defendants are "employers" under the terms of the IWPCA section 2.

123. In accordance with IWPCA, an employer is also defined as: "any officer of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation".

124. Individual Defendants MARIA MAVRAGANES, ANGELO MAVRAGANES, And "GUS" MAVRAGANES are named as an employers, as they knowingly permitted violations of the IWPCA as alleged elsewhere in this complaint.

**THIRD CLAIM FOR RELIEF**
**On Behalf of Plaintiff and All Opt-In Employees**
**Against All Defendants**
**As a Collective Action**
**(FLSA Claims, 29 U.S.C. § 201 et seq.)**

125. Plaintiff realleges and incorporates by reference all the preceding paragraphs, as if fully set forth herein.

126. The Collective claims include all plead claims found in this complaint which fall within the coverage of FLSA.

127. The Collective claims include all employees which Defendants have failed to pay at an overtime rate of pay which does not include the off the clock time and/or reduces the rate of pay by deductions.

128. At all relevant times, Defendants have been, and continues to be, an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.   At all relevant times, Defendants has employed, and continues to employ, "employee[s]," including the Plaintiffs, and each of the members of the FLSA Opt-Ins, that have been, and

23

continue to be, engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendants has had gross operating revenues in excess of Five Hundred Thousand and no/100 Dollars ($500,000.00).

129. At all relevant times, the work performed by employees including the Plaintiff and prospective FLSA Opt-Ins, employed at Defendants were, and continue to be, required or permitted by Defendants, for the benefit of Defendants, directly related to such employees' principal employment with Defendants, and as an integral and indispensable part of such employees' employment of Defendants.

130. As a result of the Defendants willful failure to record or compensate its employees – including Plaintiff and members of the prospective FLSA Collective – employed by Defendants for all hours worked, Defendant has violated, and continues to violate, the maximum hours provision of the FLSA, 29 U.S.C. § 207(a)(1), and § 215(a).

131. As a result of the Defendants willful failure to record, report, credit, and/or compensate its employees employed by Defendant, including the Plaintiffs and members of the prospective FLSA Collective, Defendants have failed to make, keep and preserve records with respect to each of their employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, including 29 U.S.C. §§211(c) and §§ 215(a).

132. The foregoing conduct, as alleged, violated the FLSA, 29 U.S.C. §§ 201 et seq.

133. Plaintiff, on behalf of herself and all FLSA Opt-Ins, seek damages in the amount of their respective unpaid compensation, plus liquidated damages, as provided by

the FLSA, 29 U.S.C. § 216(b), and such other legal and equitable relief as the Court deems just and proper.

134. Plaintiff, on behalf of herself and all FLSA Opt-Ins, seek recovery of attorneys' fees and costs of action to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

135. Plaintiff has consented to be a party to this action, pursuant to 29 U.S.C. § 216(b).

136. At all times relevant to this action, Plaintiff and all FLSA Opt-Ins were employed by Defendants within the meaning of the FLSA.

137. At all times relevant to this action, Plaintiff and all FLSA Opt-Ins were engaged in commerce and/or the production of goods for commerce and/or Defendants were an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

138. Due to Defendants' FLSA violations, Plaintiff and all FLSA Opt-Ins are entitled to recover from Defendants their unpaid compensation, an additional equal amount as liquidated damages, additional liquidated damages for unreasonably delayed payment of wages, reasonable attorneys' fees, and costs of the action, pursuant to 29 U.S.C. § 216(b)§ 6 of the Fair Labor Standards Act, 29 U.S.C.A. § 206, 9 FCA title 29, § 206, provides that every employer shall pay to each of his employees who is engaged in interstate or foreign commerce or in the production of goods for such commerce, wages at specified hourly rates.

139. Individual Defendants MARIA MAVRAGANES, ANGELO MAVRAGANES, And "GUS" MAVRAGANES are named as an employers, as they knowingly permitted violations of the FLSA as alleged elsewhere in this complaint.

## FOURTH CLAIM

### Individual Action Against Defendant Stella's
### Under Chicago Minimum Wage Ordinance "CMWO"

140.    Plaintiff realleges and incorporate by reference all the preceding paragraphs, as if fully set forth herein.


141.    Plaintiff is a covered employee by the CMWO

142.    Defendant Stella is a covered employer pursuant to the CMWO.

143.    It is and was at all relevant times, a policy of STELLA'S to pay its employees at an overtime rate of pay and/or minimum wage pursuit to the Defendant's improper deduction policy and procedures and/or off-the-clock work, and/or Tip rate violations.

144.    The Defendant's unlawful conduct was and is not inadvertent, de minimis, isolated or sporadic, but widespread, repeated and part of a pattern and practice of conduct affecting most if not all of the Defendant's employees.

145.    As a result of the foregoing, Plaintiff has been damaged in an amount to be determined at trial.

146.    CMWO contains a three-year statute of limitations regardless of whether the violation was willful.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and the FLSA Collective, pray for the following relief:

A.      That, at the earliest possible time, the Plaintiff be allowed to give notice of this collective action, or that the Court issue such notice, to all persons who are presently,

or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of Court-supervised notice, to employees whom have been employed by the Defendants and as alleged herein this complaint. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join in this lawsuit if they believe they were not paid all wages for work performed.

B.  Unpaid wages and liquidated damages pursuant to 29 U.S.C. § 201 <u>et</u> <u>seq</u>. and the supporting an Illinois Department of Labor and United States Department of Labor regulations;

C.  Unpaid regular wages, and overtime wages pursuant to the IMWL, CMWO, IWPCA and other state wage laws.

D.  Compensation originating from STELLA'S company policies, contractual obligations and ERISA requirements owed as a result of unpaid overtime wages;

E.  An injunction requiring Defendants to pay all statutorily-required wages pursuant to Illinois Law;

F.  Certification of this case as a Collective action;

G.  Designation of the Plaintiff as representative Collective, and counsel of record as Collective Counsel;

H.  Issuance of a Declaratory Judgment that the practices complained of in this Complaint are unlawful under Illinois Law, 820 ILCS 105/1 *et seq.* and supporting Illinois Department of Labor regulations and other state wage laws;

I.  Attorneys' fees and costs of this action in accordance with FLSA and Illinois Wage Laws; and

J. Attorneys' fees in accordance with all applicable laws, Illinois Law and pursuant to 705 ILCS 225/1; the Illinois Attorneys Fees in Wage Actions Act

K. Unpaid wages and liquidated damages pursuant to IWPCA and the supporting Illinois Department of Labor regulations;

L Liquidated damages in accordance with the IWPCA in the amount of 10 days of wages for each Collective member;

M. Consequential damages;

N. Additional compensation/penalty due to the Plaintiff in accordance with Section 14(b) of the IWPCA in the amount of 2% per month (up to an amount to twice the sum of unpaid wages) due under the IWPCA for the delay in payment of due wages;

O. Issuance of a Declaratory Judgment that the practices complained of in this Complaint are unlawful under Illinois Law, 820 ILCS 105/1 *et seq* and supporting Illinois Department of Labor regulations;.

P. Treble damages pursuant to the CMWO.

Q. and costs of this action; and

R. Such other relief as this Court shall deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.
\

Dated: March 13, 2019  Respectfully submitted,

     By:  -S-John C. Ireland
       John C. Ireland

      Attorney for the Plaintiff and Collective

The Law Office Of John C. Ireland
636 Spruce Street  South Elgin ILL   60177
630-464-9675  Facsimile 630-206-0889   attorneyireland@gmail.com